## IN THE MATTER OF FRANK CANNON.

*Extradition between states—Arrest—Bail—Bastardy.*

One cannot be extradited between States of the Union except for offences that are strictly criminal, and with which he has been legally charged as a fugitive from justice.

One cannot be detained within the jurisdiction to which he is extradited, to answer for some other offense than that for which he was taken, and for which extradition could not be allowed. This is especially so where the first charge cannot be maintained.

One who has been extradited, and is on bail for the offense, is not subject, meanwhile, to arrest by the same prosecuting authority for some other offense, as if he had been at liberty to withdraw from the jurisdiction.

47 MICH.—31

The bail of an accused person are entitled to his custody, and may deliver him to the authorities at any time; the legal duress does not cease until the prisoner is discharged.

Bastardy proceedings involve no indictable offence on which a conviction can be had in the course of the proceedings, and they are not strictly criminal.

Personal liberty is not held subject to State comity or on any less tenure than Constitutional right.

Every one in legal custody is entitled to legal protection.

A State court cannot arrest a .person detained within its jurisdiction, under federal process, whether the federal court interferes in his behalf or not.

Courts should refuse, in cases that are entirely free from doubt, to allow any use to be made of extradition proceedings whereby good faith would be plainly violated, and the measures necessary to bring the accused within their jurisdiction would be perverted.

HABEAS CORPUS. Submitted Jan. 10. Petitioner discharged Jan. 18.

*W. A. Underwood* for the petitioner, cited Spear on Extradition, 341; *Watson v. Judge of Superior Court* 40 Mich. 729; *Com. v. Hawes* 13 Bush 697; when the commitment is fair on its face the court can go behind it to learn whether there was jurisdiction to issue it: *Matter of Morton* 10 Mich. 208: *Matter of Hall* id. 210.

*Richard A. Watts* against. Bastardy proceedings are *quasi* criminal: *Cross v. People* 8 Mich. 113; *Connelly v. Burrill* 10 Cush. 492; and the rule by which persons under extradition are privileged, meanwhile, from arrest, does not apply where the later process is criminal or *quasi* criminal: Whart. Cr. Pl. §§ 27, 37; 2 Phil. Ev. (C. & H. ed.) 822; and would not, even though the second arrest had been made while the person is attending court: *Williams v. Bacon* 10 Wend. 636: *Lucas v. Albee* 1 Den. 667; *Moore v. Green* 73 N. C. 394: 21 Am. 470; *Key v. Jelto* 1 Pitts. (Pa.) 117; *Dow's Case* 18 Penn. St. 37; *Ham v. State* 4 Tex. App. 645; *Goodwin v. Lordon* 1 Ad. & El. 378; *Hare v. Hyde* 16 Q. B. 394: and it certainly would not apply if he was neither under actual arrest at the time

or attending, going to or returning from court: *Clark v. Grant* 2 Wend. 257; *Chaffee v. Jones* 19 Pick. 260; *Corey v. Russell* 4 Wend. 204.

CAMPBELL, J. Cannon obtained a writ of *habeas corpus* from this court to examine into the cause of his detention by the Sheriff of Lenawee county. It now appears that on proceedings of a criminal nature under a complaint for seduction, at the instigation of the prosecuting attorney for Lenawee county, a requisition was made by the governor of Michigan on the governor of Kansas, by whom Cannon was delivered over to the authorities of this State, who took him to Lenawee county, where he was arrested on a criminal warrant under said charge of seduction, and brought before a justice of the peace on the 12th day of December, 1881, for examination. On that day the justice adjourned the hearing until December 27th, and Cannon failing to give bail for his appearance on that day, was committed to prison, but on the 15th day of December gave bail and went to the house of his father, who was his security. On the 16th day of December, 1881, the prosecuting attorney commenced bastardy proceedings for the same transaction involved in the previous complaint for seduction, and a warrant was issued for his arrest and served on the 17th day of December, when he was brought before the justice, who adjourned that proceeding until December 20th, and Cannon failing to give bail for his appearance on that day was committed to jail. On the 20th Cannon refused to plead to the merits, but made a showing and application for discharge, based on his exemption from any prosecution except for the crime for which he was delivered up by the governor of Kansas. The justice refused to discharge him, and ordered him to recognize for his appearance at the next term of the circuit court, to answer the bastardy charge. Refusing to do so, he was committed and kept in custody until the present writ was sued out. On the 27th day of December he was brought before the magistrate on the seduction charge, when it was at once discontinued on the admitted ground that it was not founded on any legal reasons.

The only question before us is whether under these circumstances, the imprisonment for bastardy was lawful.

For the purposes of the present hearing it is not made a point that the prosecuting attorney, when he obtained the extradition, procured it with an actually fraudulent design to get the prisoner within the jurisdiction for different proceedings. It may be assumed that he supposed the seduction complaint would lie. It is admitted, however, that the attorney became satisfied of the contrary on the 16th, and that he without supposing it was improper set on foot the bastardy proceedings, and caused the arrest with that knowledge.

It was claimed on the argument that when arrested for bastardy, Cannon was not under legal restraint, but at large, and therefore that he was no longer under the operation of the extradition proceedings. This position is not true. He was bound to appear before the justice on the 27th of December, and would forfeit his bail if he did not. His bail were in law entitled to his custody, and could at any time have handed him over to the authorities. The legal duress in such a case is not ended until the prisoner is discharged.

The admitted facts show, then, that the criminal proceedings were kept on foot for more than ten days after they were known to be groundless, and until the bastardy examination had been ended, and the prisoner bound over and committed on that. And they show also that the second arrest was made under the same control and management as the first, and by the same prosecuting attorney.

The question then becomes narrowed to the inquiry whether an arrest made for a different purpose, on which no extradition could have been demanded, was lawfully made, when the prisoner was brought into this State under a requisition, and no proceedings had or attempted for the crime on which he was delivered up to this State.

Under the laws of this country, and of most civilized countries, no person can be lawfully claimed, and here—at least—no person can be lawfully delivered over to another

jurisdiction, except under some law authorizing it, and fixing the conditions on which it may be done. Under our Constitution a treaty is a law of the land, and there is no treaty which does not define these conditions with some care. Under the Constitution of the United States such demand can only be made between states where the double conditions exist that the party demanded has been legally charged with crime, and has fled from justice. And as no State can enter into agreements with other states without the consent of Congress, and states cannot even with that consent make treaties, the power of demanding or of extraditing is confined to such criminal cases. Bastardy proceedings, although of a mixed character, involve no indictable offence on which a conviction could be had in their course, and they are not criminal proceedings in the proper sense of the term. It is not pretended that any demand of extradition could be made on such a charge. Our own decisions have settled the character of such proceedings as not criminal. *Cross v. People* 8 Mich. 113; *Semon v. People* 42 Mich. 141; *Sutfin v. People* 43 Mich. 37; *Waite v. Washington* 44 Mich. 388.

We do not think the considerations involved in this inquiry have any especial connection with State pride or State comity. The State of Michigan has no legal power to demand, and the State of Kansas has no legal power to deliver up, any persons but those charged as fugitive criminals. The constitutional safeguards on this subject concern the individual's liberty and not merely the State's dignity, and no one holds his liberty subject to State comity or on any less tenure than constitutional right.

Can a person who has been demanded for prosecution as a criminal, and who could not have been demanded on any other ground, be arrested after arriving here on a different complaint, and have his original accusation dropped, by the same prosecuting authority?

If the requisition had been made for an expressly fraudulent purpose, and with no expectation of prosecution for the crime which was its pretext, we do not think any depart-

ment of the government could sanction such a use without the plainest perversion of justice. No ingenious reasoning could remove from such a transaction the disgrace which no decent commonwealth could afford to incur. It does not seem very clear to us that it would be much less fraudulent in law or wrong in fact to take advantage of such an extradition for a similar purpose, when it is discovered that it never ought to have been demanded, and was obtained on insufficient grounds.

It is the law of this State, whatever doubts may exist elsewhere, that when the law compels a person to attend at a place away from that where he is abiding, it at the same time usually protects him from having undue advantage taken of his unwilling and enforced presence. And this is no more than simple justice. Every one in legal custody has a right to legal protection. Accordingly it was held in *Watson v. Judge of the Superior Court of Detroit* 40 Mich. 729, that an arrest in a State court of a person attending under process of a federal court, was unlawful, and should not be permitted whether the federal court interfered or not. The question was fully discussed on its general merits, and the very well considered case of *Commonwealth v. Hawes* 13 Bush (Ky.) 697, was referred to with approval, as declaring the correct doctrine on the subject. It was claimed on the argument here that while that case may have been properly decided as applicable to extradition treaties with other nations, it had no bearing on extradition between states. We do not perceive any ground for the distinction. The duties of one State to another are measured by law, and not by their mere good pleasure; and so are the rights of citizens. The disregard of domestic duties and of foreign duties should not be considered as different in quality, and where both depend on law it is impossible to find good reason for holding either class of obligations as undeserving of obedience.

There has been some disposition to draw nice distinctions concerning the validity of arrests of persons who have been taken to the place of arrest under different process. Where

both arrests are under the process of the same common-wealth, and purely domestic throughout, there may be room for a good deal of discretion in such matters. And it is undoubtedly true that the analogies of these domestic cases have been followed in regard to extradition cases, by some courts of unquestioned eminence. In the conflict of opinion we feel bound to prefer the rule that compels regard to good faith. It is very well known that the perversion of extradition proceedings has on more than one occasion led to difficulties between nations, and to refusals by State exec-utives to deliver up persons charged with crime, whose arrest was supposed to be desired for sinister purposes. It is not always possible to get at the facts in such cases. But we think the courts of justice are bound when a case comes before them which is entirely free from doubt, to refuse to allow any use to be made of such proceedings which would be a manifest violation of good faith, and a perversion of the measures which had to be resorted to in order to bring the party accused within our jurisdiction. We do not deem it necessary to refer at large to the decided cases, which were cited on the hearing. They cannot be reconciled in principle—although very few of them would conflict with our views on so plain a case as the present.

The prisoner made out a case which in our opinion ren-dered his confinement illegal, and entitled him to a dis-charge.

The other Justices concurred.