---

*Ex parte* Coy.

(*District Court, W. D. Texas.* November 30, 1887.)

1. EXTRADITION—TRIAL FOR DIFFERENT OFFENSE—HABEAS CORPUS.

In application for a writ of *habeas corpus* on the ground of illegal detention, relator stated that he was extradited from the republic of Mexico on the charge of the murder of S. L. Elder and Bud Elder, and on no other charge; that in those cases he had been admitted to bail, but that he was now held in confinement by the sheriff of Bexar county, Texas, on the charge of the murder of one James Jackson; and that, by the provisions of the extradition treaty, he is protected from arrest on any other charge than the one upon which he was extradited. *Held*, that relator has the right to claim exemption from trial upon any other charge than those mentioned in the extradition proceedings.[1]

---

[1] See note at end of case.

**2. SAME—ARREST ON DIFFERENT CHARGE—WAIVER OF PRIVILEGE.**
    A person illegally tried for another crime than that for which he was extradited, cannot waive his privilege of exemption under the provisions of the extradition treaty.

**3. SAME — ARREST ON DIFFERENT CHARGE — HABEAS CORPUS — CONCURRENT JURISDICTION OF STATE AND FEDERAL COURTS.**
    The state courts have concurrent jurisdiction with the United States courts in cases where a person is illegally tried for another offense than that for which he was extradited, and where there is no reason to doubt the intention of the state court to respect the provisions of an extradition treaty the United States court will refer petitions for *habeas corpus* under the extradition treaty to the action of the state courts.[1]

Petition for Writ of *Habeas Corpus.*
The following is the petition as filed:

*To the Hon. E. B. Turner, Judge of the United States District Court for the Western District of Texas, Sitting in Open Session at San Antonio, Texas:* Your petitioner, Juan Coy, would respectfully represent that he is illegally restrained of his liberty by Nat Lewis, sheriff of Bexar county, Texas, by virtue of an order of commitment issued out of the district court of Wilson county, Texas, the Hon. GEORGE McCORMICK presiding, at the June term of said court, A. D. 1887, a copy of which order is hereto attached and made a part hereof, and marked "Exhibit B;" wherefore he prays for your honor's most gracious writ of *habeas corpus,* that the cause of his detention may be inquired into, and that he may be discharged from said restraint, as he is in law entitled to.

Your petitioner represents that on or about the sixth day of October, 1886, when petitioner was a resident of the republic of Mexico, and not a resident of the state of Texas, nor of the United States of America, and while petitioner was pursuing his daily avocations and business in said republic of Mexico, he was by force and arms arrested under and by virtue of an extradition warrant issued by the authorities of the republic of Mexico, which extradition was based upon the requisition of the extradition agent in and for the county of Webb and state of Texas, in the United States of America, for all such purposes, and with all such powers, as are conferred on him by law, and which said requisition bears date on or about the second day of October, 1886; that, being so arrested by virtue of said extradition warrant, petitioner was forcibly removed from the republic of Mexico, and against his will transported into the said county of Webb and state of Texas, where he was delivered to the sheriff of said Webb county, who transported petitioner to Bexar county, Texas; that he has ever since been held in close confinement, a part of the time in Karnes county, a part of the time in Wilson county, and the balance of the time in Bexar county, where he is now held.

That the requisition upon which he was extradited as aforesaid was based upon the allegation that petitioner was charged before D. B. BULLER, a justice of the peace of said Karnes county, Texas, with the murder of one J. L. Elder and Bud Elder; that the said affidavit, charging this petitioner with the murder of J. L. Elder and Bud Elder, was made and sworn to by I. R. Graves, who was then and there county attorney of Karnes county, Texas, and petitioner avers that his arrest and extradition was for the murder of J. L. Elder and Bud Elder, and for no other offense, and for the sole purpose of placing this petitioner on trial for the murder of said J. L. Elder and Bud Elder. And petitioner would show that he stands indicted in the district court of De Witt

---

[1] The federal and state courts have concurrent jurisdiction in extradition proceedings. parte Brown, 28 Fed. Rep. 653; In re Roberts, 24 Fed. Rep. 132.

county for the murder of said J. L. Elder and Bud Elder upon two separate indictments; that he applied for and obtained bail in said two cases—in the sum of $5,000 in the one case, and $2,500 in the other—from the Honorable H. CLAY PLEASANTS, judge of the Twenty-Fourth judicial district, (a copy of the order is hereto attached, and marked "D,") and that petitioner has prepared and executed the necessary bonds in said two cases in conformity with the order of said district judge, and that the sheriff of Bexar county has approved the same, and that petitioner would be now discharged upon said bail were it not for the charge of murdering one James Jackson on the twenty-seventh day of June, 1886, in the county of Wilson, Texas. And petitioner would respectfully show that he now stands charged in the district court of Wilson, by indictment, of the murder of James Jackson on the twenty-seventh day of June, A. D. 1886, and that he is here and now illegally restrained of his liberty by the said Nat Lewis, by virtue of the order aforesaid, based upon the charge of the murder of James Jackson on the twenty-seventh of June, 1886, aforesaid, and in fact the said James Jackson was killed in Wilson county on the twenty-seventh June, 1886; and thereafter at the December term of the district court of Wilson county, 1886, and in the month of December of said year, your petitioner was indicted for the murder of said James Jackson in Wilson county, charging the offense to have been committed on the twenty-seventh June, 1886. Petitioner would respectfully show that he was extradited on the sixth day of October, 1886, that the requisition for such extradition was on the second of October, 1886, and that the warrant of extradition issued on the sixth October, 1886,—which was long subsequent to the twenty-seventh June, 1886, the day and date of the killing of James Jackson, and for which your petitioner is now restrained of his liberty.

Petitioner would show that he was extradited for the murder of J. L. Elder and Bud Elder, and not for the murder of the said James Jackson; that by the treaty between the United States and the republic of Mexico, it is provided that parties extradited shall only be tried for the particular offense named in the extradition warrant; that the charge of the murder of James Jackson was not embraced or mentioned in the extradition warrant upon which this petitioner was arrested, nor in the affidavit, nor in the requisition for said extradition warrant by which this petitioner was arrested. And petitioner avers that he has never been extradited upon the charge of the murder of said James Jackson, and his trial thereon would be in violation of the rights of this petitioner, and of the supreme law of this land, viz., the treaty between the United States and the republic of Mexico, and would be in bad faith to the republic of Mexico, which has never delivered this petitioner, or consented to deliver him, to answer the charge of the murder of James Jackson. Attached hereto marked "Exhibit A" are certified copies of the proceedings of the extradition of the petitioner, and verified translations thereof, which are made part and parcel of this petition.

Petitioner further avers that on the eleventh inst. he applied to the Hon. GEORGE McCORMICK, judge of the Twenty-Fifth judicial district of the state of Texas, for a writ of *habeas corpus* to procure his discharge from custody on account of said charge of the murder of said James Jackson, setting up the treaty stipulations between the government of the U. S. of America and the republic of Mexico, and alleging that he has not been extradited for said offense, and is therefore entitled to his said discharge. That said writ was granted, returnable before said judge on the fifth day of December next, sitting in the district court of Wilson county, Texas; but being desirous of a more speedy hearing, and the question being a federal question exclusively to be considered, petitioner abandoned said application, and filed his sworn abandonment of said application with the clerk of the district court of Wilson county on the nineteenth day of November, 1887, the said application and the said judge's

order thereon being thereto filed with said clerk, with direction to issue the writ prayed for,—a copy of which writing, abandoning said application, is hereto attached and made a part hereof, marked ".Exhibit C."

Premises considered, petitioner prays that your honor direct the writ prayed for to issue, commanding the said Nat Lewis to produce forthwith the body of your petitioner before your honor, and that, upon the hearing thereof, your petitioner be discharged from custody, and that he have a reasonable time to return to the republic of Mexico after the final disposition of the said charges against him for the murder of J. L. Elder and the said Bud Elder, before he shall be arrested on the said charge of the said James Jackson.

TEEL & HATTON.　　　　　CHARLES H. MAYFIELD.
E. R. LANE.　　　　　　　L. S. LAWHORN.
BROWN & BEASLY.　　　　Atty's. for Petitioner.

I, Juan Coy, being duly sworn, do say upon oath that the allegations contained in the foregoing petition are true to the best of my belief.

JUAN S. COY, Petitioner.

Sworn to and subscribed before me this twenty-second day of November, A. D. 1886.　　　　W. G. SAMUELS, Notary Public, Bexar county.

[Indorsed:] No. 850. *Ex parte Juan Coy.* Application for the writ of *habeas corpus* to Hon. E. B. Turner. Cited November 22, 1887. W. C. ROBARD, Clerk.

The following is the statement of facts as agreed upon:

It is hereby agreed that the following are substantially all the facts of this case: (1) That for thirty years the petitioner, Coy, has been a citizen of Texas. (2) That in October, 1886, he was indicted in two cases for murder, committed in Karnes county, Texas, September 6, 1886. (3) That upon said charges he was legally extradited from the republic of Mexico on October 6, 1886. (4) That in the county of Wilson he was on December 1, 1886, indicted for the murder of James Jackson, committed June 27, 1886, therein. (5) On the first two charges he was admitted to bail, but was not released by reason of his arrest and detention under the charge from Wilson county. He gave the required bail in the said first two cases, which was duly approved, and he is only now detained under the charge from Wilson county, for which he has never been extradited, and on which charge he was never arrested until after his extradition on said two first-named charges. (6) That no application was ever made for Coy's extradition on the Wilson county charge. (7) That when Coy was arrested for extradition he was residing in New Laredo, in the republic of Mexico, just across the Rio Grande river, within two miles of Texas, where he had been for two weeks without departure therefrom. (8) That the charges of murder in Karnes county, and that one preferred against him in Wilson county, are of equal degree, being each for murder in the first degree. (9) That at December term, 1886, of the district court of Wilson county, the petitioner, Coy, was duly arraigned on the indictment for said charge of murder, committed in said county, and was duly tried, upon a plea of not guilty, before the district court and a duly-qualified jury there; that a mistrial was the result of this proceeding. (10) That he did not interpose in said trial a plea to the jurisdiction of the state court on any ground; that he did not, nor did his counsel, as they claim, know for what case he had been extradited, but thought he had been kidnaped. It was only after the testimony had been introduced that they learned that he had been extradited in the Karnes county cases, and not in the Wilson county case. (11) That he is now restrained under and by virtue of the process exhibited by Sheriff Lewis. (12) That, on the eleventh day of this month, (November,) he (Coy) sued out a writ of *habeas corpus* before Dis-

trict Judge McCormick, setting up the same grounds for his release upon which he relies here; that the writ was granted by said district judge, and the case set for hearing at Floresville, Wilson county, next Monday, December 5th, at which time and place the said district court will be in regular session, and where and when the said sheriff, by order of said court, is commanded to produce the body of Coy, together with his authority for his restraint, etc.; that Coy, in said district court, on the nineteenth instant, filed his declaration, and his motion of abandonment of said application, as per exhibit attached to his petition filed in this case, and paid the costs incident to said proceeding up to said date; that no order has yet been taken in said court on said declaration and motion. (13) That since the said mistrial in Wilson county the said Coy has formally filed and raised by plea the questions herein presented as to the jurisdiction of said state court growing out of his detention without extradition in said case, which has not been passed on by said court. (14) That all the pleadings and exhibits filed in this case, or attached, or referred to therein, may be referred to as evidence, subject to all legal exceptions, etc., that may be raised thereto. (15) That the republic of Mexico has in no way interposed objections to the trial of Coy on the Wilson county charge, or to Texas exercising jurisdiction over him in the proceedings complained of by Coy, so far as known or heard of by the parties hereto, or by Coy himself; nor do we know that said republic knows of his proposed trial in Wilson county.

*George Puschal,* Dist. Atty., *A. J. Evans,* and *Mr. Hogg,* Atty. Gen. of Texas, for defendant.

*Tecl & Hatton, L. Lawhorn, Mr. Mayfield,* and *Brown & Beasly,* for relator, Juan Coy.

TURNER, J. On the twenty-second inst. the relator presented his application for a writ of *habeas corpus* on the alleged ground that he was unlawfully restrained of his liberty by the sheriff of Bexar county, Texas. The petitioner, in brief, stated that the relator had been extradited from the republic of Mexico upon the charge of the murder of S. L. Elder and Bud Elder, and for no other or different offense; that he has been admitted to bail in said cases, but that he is now restrained of his liberty upon a charge of the murder of one James Jackson; that, having been extradited upon the charge of the murder of the two Elders, he is protected from arrest for any other or different offense than those for which he was extradited; that he had instituted proceedings for his release by applying to the Honorable Judge McCormick, district judge of the state of Texas, for a writ of *habeas corpus,* but that he had abandoned his suit thus instituted, and had paid all costs incident thereto.

These are, in brief, the facts stated in the application presented to me during the present sitting of this court, and upon that showing I directed the writ to issue, which was accordingly done. Under the statement of facts thus presented there can be no doubt but that relator has the right to claim exemption from trial upon any other charge than those mentioned in the extradition proceedings; and, inasmuch as the question arises under a treaty with our sister republic, the federal court has jurisdiction to issue the writ, and inquire into the cause of detention, and to discharge the relator from such confinement, if the facts in the case, when fully made known, show that justice and law require it. The question

of the right of this court so to act is conceded; the propriety of such action in this case is challenged and seriously questioned. It is claimed, and justly claimed, that the state courts have concurrent jurisdiction with the federal courts, and that that comity which does, and of necessity must, exist between the federal and state courts, would suggest the propriety of a careful exercise of that power by the federal courts when the relator is held by virtue of state authority, unless it should be made manifest that the state courts might reasonably be regarded as unwilling to observe the treaty stipulations referred to as the supreme law of the land.

The agreed statement of facts shows that relator was extradited upon the charge of the murder of the two Elders only. The statement further shows that relator had dismissed his suit or action taken with a view to his release by Judge McCormick, and had paid all the costs incident thereto. This he might lawfully do, and that left his case the same as if he had made no application to the state judge for the writ of *habeas corpus.* The statement of facts further shows that the Wilson county case, that was tried, resulted in a mistrial upon the charge of the murder of James Jackson, and that he (relator) has since said trial filed in the state court, where that indictment is pending, his plea to the jurisdiction or right of the state court to proceed to try him upon that charge, because not embraced in the extradition proceedings.

That the state courts have concurrent jurisdiction with this court in the premises is conceded; and that, if relator does not obtain his release therein, he may remove the case ultimately into the supreme court of the United States, and there secure immunity from trial upon the charge of the murder of James Jackson until opportunity be given him to return to Mexico, where he sought asylum. The question presents itself to this court, not as one of the abstract right to release, but whether the exercise of that right, under the facts of this case, would be the exercise of a sound discretion, considering the comity that does and should exist between the federal and state courts. There is nothing in evidence before me tending to show that the state judge will disregard the obligations of treaty stipulations, and treat them other than the supreme law of the land, and, upon the same showing made here, discharge the relator from detention and trial upon the charge of the murder of James Jackson until he shall have had reasonable time to return to Mexico. To assume that it will not, in advance, is to distrust the integrity of the state court. If it shall transpire that the state court shall be remiss in the discharge of a duty devolving upon it with reference to questions arising under the constitution of the United States, treaty stipulations, or the laws of congress, the federal courts will still be accessible. See *Ex parte Royall,* 117 U. S. 241 *et seq.,* 6 Sup. Ct. Rep. 734, and cases there cited. See, also, *U. S. v. Rauscher,* 119 U. S. 409, 7 Sup. Ct. Rep. 234, and case there cited; *Blandford v. State,* 10 Tex. App. 627.

The views thus expressed avoid the necessity of recurring to another point strenuously urged here with apparent earnestness, viz., the proposition that the relator has waived his immunity from punishment for other offenses not embraced in the extradition proceedings. If it were

true that the only question involved related to how Mr. Coy should be treated we might listen with propriety to what might be said upon that point. Mr. Coy, while entitled to all the benefits of the law in his favor, is not a very important factor in considering this question. This government has entered into solemn treaty stipulations with Mexico with reference to refugees from justice. These stipulations are, by a declaration of the constitution of the United States, the supreme law of the land, state constitutions and laws to the contrary notwithstanding. These stipulations this government cannot forget, nor can it justify their violation, without justly incurring the contempt of the civilized world; and yet we are seriously told that Mr. Coy has waived this binding obligation on the part of the United States, and has canceled the right of Mexico to expect the government of the United States to keep its plighted faith. This is not all; the political authorities of the United States have made the declaration to the world, contained in section 5275, Rev. St., which reads as follows:

"When any person is delivered by any foreign government to an agent of the United States, for the purpose of being brought within the the United States, and tried for any crime of which he is duly accused, the president shall have power to take all necessary measures for the transportation and keeping of such accused person, and for his security against lawless violence, until the final conclusion of his trial for the crime or offenses specified in the warrant of extradition, and until the final discharge from custody or imprisonment for or on account of such crimes or offenses, and for a reasonable time thereafter, and may employ such portion of the land or naval forces of the United States, or of the militia thereof, as may be necessary for the safe-keeping and protection of the accused."

And again we are gravely told that Mr. Coy has released the government from this solemn declaration by a waiver. Was Mr. Coy a part of the treaty stipulations with Mexico? Is Mr. Coy able to bind and unbind the government from its duties and obligations towards other nations by any act that he can perform? The statement of the proposition discloses its absurdity.

The relator will be remanded to the custody of the sheriff of Bexar county, trusting and confiding in the intelligence, virtue, and wisdom of the state courts for such action as law and pride of country shall demand.

## NOTE.

EXTRADITION—FOR ONE OFFENSE—TRIAL FOR ANOTHER. Independent of treaty stipulations, no absolute obligation of public duty rests upon a nation to surrender fugitives from justice to the country whose laws they have violated, and the general rule is that a person whose extradition has been obtained cannot be held to answer for any other crime than the one for which he was surrendered, until reasonable opportunity has been given him, after his release or trial upon the charge for which he was extradited, to return to the country from whose asylum he was taken. U. S. v. Rauscher, 7 Sup. Ct. Rep. 234. This rule is recognized in People v. Gray, (Cal.) 5 Pac. Rep. 240, a case arising under the treaty with Mexico, and in cases arising under the extradition treaty with Great Britain. Ex parte Hibbs, 26 Fed. Rep. 421; U. S. v. Watts, 14 Fed. Rep. 130. But see dissenting opinion in the case of U. S. v. Rauscher, *supra.* With regard to extradition between the states, it is held that in the application of the rule above cited no distinction is to be made between international and interstate extradition. In re Cannon, (Mich.) 11 N. W. Rep. 280. But in Harland v. Territory, (Wash. T.) 13 Pac. Rep. 453, it is held that the comity of the states, with regard to extradition, is exercised with more liberality than that which characterizes the relations between foreign nations,

and that a man may be tried for a slightly different offense from the one for which he was extradited, there being nothing to suggest fraud. And in *Wisconsin* the court holds that a man who has been extradited on the charge of the commission of a particular crime, and, on trial, acquitted, may be immediately rearrested for an entirely different offense, without being allowed a chance to return to the state from which he was extradited. State v. Stewart, 19 N. W. Rep. 429.