THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE W. POST, Appellant, v. ISAAC B. CROSS, Sheriff of Albany County, Respondent.

*Interstate extradition — a criminal may be extradited for one crime and be subsequently indicted and tried for a different offense — Constitution of the United States, art. 4, sec. 2.*

George W. Post was indicted by a grand jury of Albany county, New York, for grand larceny on February 13, 1889, and on October 9, 1891, was arrested upon a requisition made by the governor of New York upon the governor of Wisconsin, from which latter State, his residence, he was brought to Albany county. He was arraigned and plead not guilty. On November 30, 1891, he was indicted for robbery in the first degree, and the indictment for grand larceny was subsequently quashed.

Upon an application for his discharge:

*Held*, that interstate extradition, being founded upon section 2 of article 4 of the Constitution of the United States, applied to all crimes and was a matter of strict right upon the part of the State demanding the criminal.

That it was proper, therefore, that such a criminal should be extradited for one offense and be held and subsequently indicted for a different offense.

The distinction between extradition from foreign countries and extradition as between the States, considered.

APPEAL by the relator, George W. Post, from an order of a justice of the Supreme Court, entered in the office of the clerk of Albany county on the 3d day of May, 1892, dismissing a petition and writ of *habeas corpus*, refusing to release the relator from imprisonment and remanding him to the custody of the sheriff of Albany county after a hearing at chambers.

*John H. Gleason*, for the appellant.

*James W. Eaton*, district attorney, for the respondent.

Putnam, J.:

The relator, George W. Post, being indicted by the grand jury of Albany county at a Court of Sessions held on February 13, 1889, for the crime of grand larceny, was, on October 9, 1891, arrested on a requisition by the governor of New York to the executive of Wisconsin, in the latter State (his then residence), brought to this

State and delivered to the sheriff of Albany county. During the same month he was arraigned on said indictment, and pleading not guilty was committed to the custody of said sheriff upon a bench warrant issued by the district attorney. On November 30, 1891, the relator, at a Court of Oyer and Terminer in said county, was indicted by the grand jury for robbery in the first degree, and being arraigned plead not guilty. On April 21, 1892, the former indictment for grand larceny was by order of the court duly quashed; and on that day, and before the prisoner was released, the said district attorney issued to the sheriff a bench warrant on the indictment for robbery, and relator is now imprisoned thereunder. He claims and insists that being brought to this State on the requisition of its governor on the charge of grand larceny, he cannot be held here on a charge for another and different crime until he has had a reasonable time to return to the State from which he was brought, and hence that he is now entitled to be discharged.

It may at this time be deemed settled that a fugitive from justice, extradited from a foreign country, can only be held and tried for the offense for which his extradition was obtained. Formerly there was some conflict of authority on this question, but the decision of the Supreme Court of the United States, in *United States* v. *Rauscher* (119 U. S., 407), has settled the law in this regard.

Does the doctrine, as laid down in that case and kindred authorities, apply in cases of interstate extradition? The question is a debatable one, but in my judgment there is a clear distinction between cases of foreign and interstate extradition. In the former case the right to demand a fugitive from justice depends upon treaties between governments. In *United States* v. *Rauscher* (*supra*) it was held:

" (1.) That a treaty to which the United States is a party is a law of the land, of which all courts, State or national, are to take judicial notice, and by the provisions of which they are to be governed so far as they are capable of judicial enforcement."

" (2.) That, on a sound construction of the treaty under which the defendant was delivered to this country, and under the proceedings by which this was done and acts of congress on that subject (U. S. R. S., §§ 5272, 5275), he cannot lawfully be tried for any other offense than murder."

" ( 3.) The treaty, the acts of congress, and the proceedings by which he was extradited, clothe him with the right to exemption from trial for any other offense until he has had an opportunity to return to the country from which he was taken for the purpose alone of trial for the offense specified in the demand for his surrender. That national honor also requires that good faith shall be kept with the country which surrenders him."

The same justice who delivered the opinion in the Rauscher case, in *Ker* v. *Illinois* (119 U. S. Rep., 443), speaking of the Rauscher case, says : " It was there held that, when a party was duly surrendered by proper proceedings under the treaty of 1842 with Great Britain, he came to this country clothed with the protection which the nature of such proceedings and the true construction of the treaty gave him. One of the rights with which he was thus clothed, both in regard to himself and in good faith to the country which had sent him here, was, that he should be tried for no other offense than the one for which he was delivered under the extradition proceedings."

The treaty of 1842 referred to in the said case provided for the delivery of a fugitive in case of certain mentioned crimes, and that said delivery should only be made upon such evidence of criminality as would justify his apprehension and commitment for trial according to the laws of the place where the fugitive shall be found, if the crime or offense had been there committed.

The right to arrest a fugitive from justice in any other State of the Union is given by the Constitution. It exists as to all crimes. No proof is required except a copy of the indictment or an affidavit made before a magistrate charging the person demanded with a crime properly certified.

There is a clear distinction between the two cases. In the one case the right of extradition depends upon a treaty or contract between two countries. It only exists as to a few crimes, and there is a provision for the giving of evidence before the rendition of the fugitive. In the other case the right of extradition is given by the supreme law of the land and applies to all crimes, including misdemeanors. There is no examination had, the fugitive being delivered up on the copy of the indictment or an affidavit duly certified.

In cases of foreign extradition the right to demand fugitives is

limited; only to be exercised in a certain way and after certain proceedings, and in cases of a limited number of crimes. There are crimes under our laws, such as political ones and other offenses, for which foreign nations would not wish or agree to surrender to us fugitives from justice. Hence it is important that, in extradition proceedings from foreign countries, the criminal should only be tried for the crime for which he was brought within our jurisdiction; the crime on account of which the foreign nation has consented to surrender him to us, for which we demanded his rendition.

I think, therefore, that, while in cases of fugitives from a foreign country delivered to us, under the provisions of a treaty, it is proper that the criminal should only be held for the crime on account of which the foreign country surrendered him to us, because, in fact, such a procedure is according to the contract under which the criminal was delivered to us, as justly held by the Supreme Court of the United States; no such reason exists why a fugitive from justice from this State, arrested in another State and brought here, should not be tried for another offense than the one for which he was arrested.

The reason stated in " Rauscher " and kindred cases why one extradited from a foreign country should not be brought to trial for an offense different from the one for which he was delivered up, does not exist in cases of interstate extradition. In such a case the fugitive is surrendered by virtue of the supreme law of the land. The authorities demanding his rendition have an absolute right to such surrender in all cases of crime. They have as clear a right under the law as if the fugitive, instead of being in another State, was in another country of this State. The procedure is different in the two cases, but in both the arrest and rendition of the criminal is an absolute right under the law. That law contains no provision, express or implied, that a fugitive shall not be tried for an offense other than the one for which he was delivered under the extradition proceedings. Nor is there any good reason why the fugitive, being brought within our State, should not be held and tried for any and every offense he may have committed here.

The above views are supported by several well-considered cases. (See *State ex rel. Brown* v. *Stewart*, 60 Wis., 587; *In the Matter of Noyes*, 17 Alb. L. Jour., 407; *U. S.* v. *Watts*, 14 Fed. Rep., 138,

139; *People ex rel. Suydam* v. *Sennott*, 20 Alb. L. Jour., 230; *Hackney* v. *Welsh*, 107 Ind., 253.)

There are several authorities cited by the appellant holding a contrary doctrine, among which are : *State* v. *Hall* (40 Kan., 328); *In the Matter of Cannon* (47. Mich., 481); *Matter of Hope* (7 N. Y. Crim. Rep., 406); *Matter of Baruch* (7 N. Y. Crim. Rep., 325); *Ex parte McKnight* (28 N. E. Rep., 1034). ·

It must be conceded that these conflicting cases leave the question presented to us in this case a somewhat doubtful one. The views, however, enunciated in the above cited case of *State ex rel. Brown* v. *Stewart*, and kindred cases, accord with my opinion, and I think should be followed in the disposition of this case. And I desire to refer to the said last-mentioned case as containing a full, able and complete discussion of the question under consideration.

It has been determined that a fugitive from justice, who had been kidnapped and brought into the State where the crime was committed, being so within the jurisdiction of such State, although illegally brought there, may, nevertheless, be held and tried for his offense. (*In re Miles*, 52 Vt., 609; *State* v. *Brewster*, 7 id., 118; *State of Iowa* v. *Ross and Mann*, 21 Ia., 467; *People* v. *Rowe*, 4 Parker Crim., 253; *Dow's Case*, 18 Pa., 37; *Mahon* v. *Justice*, 127 U. S., 700; *Ker* v. *Illinois*, 119 id., 437–444.)

I am unable to perceive that the relator, legally brought within our jurisdiction on a criminal charge, which has been abandoned, and thus being within the State, is in any better condition, as to exemption from arrest under the indictment against him, than he would have been if brought here unlawfully by kidnappers.

If the relator were within this State, by virtue of a treaty and contract between nations which impliedly provided that he should only be brought to trial for the offense on account of which he was extradited, or if the Constitution and laws of the United States, as to interstate extradition, contained any provision as to his trial only, for the crime named in the extradition proceedings, the case would be different. As it is, the relator being within our jurisdiction and indicted for a crime, and the authorities of the State, under the Constitution and laws of the United States, having an absolute right to his rendition here from any State for trial under the indictment, I am unable to see that any useful purpose would be served

by going through the form of returning him to Wisconsin and again having him brought back to this State.

The order should be affirmed.

Mayham, P. J., and Herrick, J., concurred.

Herrick, J.:

The application of the relator to be discharged is founded upon the assumption that interstate extradition is governed by the same principles as extradition from foreign countries. This, I think, is error. It seems to me entirely unnecessary to call attention to the fact that the relations between the States of the Union, and the relation between the United States, or one of the States, and foreign governments, are entirely different. Without discussing or citing the various cases that have arisen and have been reported in the different State courts, and in the United States courts, and among which there is considerable conflict of opinion, it seems to me that a brief discussion or review of the principles which have guided the courts in determining that prisoners extradited from foreign countries cannot be tried for any other than the specific crime for which they were extradited, will show that the same reasons or principles do not apply in the case of a person extradited from one State of the Union to another.

Extradition from foreign countries is based either upon international comity or upon treaty; where no treaty exists prisoners have seldom been given up for any except the gravest of offenses, and it has been the rule not to surrender for any offense of a political character; good faith between nations, under such circumstances, requires that a party should not be tried for any other offense than that which has been brought to the attention of the foreign government, and upon which it has surrendered him.

There being no law governing the matter, the foreign State in each instance passing upon the particular case brought to its attention, it might very well be that while it might be willing to extradite in the case that was laid before it, that it might not be willing to extradite in the case for which it was afterwards proposed to bring the prisoner to trial. If such a practice were to be tolerated, persons having an asylum in foreign countries could be brought

into another under the pretense of a desire to try for one offense, whereas, in truth and in fact, it was the intention to try for another or different offense, for which extradition would not be granted, as, for instance, political offenses.

Where extradition is founded upon treaty, I think, without exception, the specific crimes for which extradition will be granted are set forth in the treaty, and specifying the particular crimes for which extradition will be granted, excludes all other crimes; and the fair inference is that the treaty-making powers are not willing to surrender to each other persons to be tried for any other or different crimes except those mentioned in the treaty; and a strict observance of such treaty, and good faith as well, requires that the persons extradited for an offense mentioned in the treaty should not be tried for any other or different offense.

And it was upon these principles, as I understand it, that the case of the *United States* v. *Rauscher* (119 U. S., 407) was decided. Although decided by a divided court, and upon different grounds, that is now the leading and controlling case in this country upon foreign extradition. Coupled with the reasons I have recited, the court in that case also called attention to the fact that the laws of congress of the United States provided that persons brought into this country by extradition must be tried for the offense upon which they were extradited; and Justice GRAY, in concurring in the decision of the court in that case, concurred upon the single ground that the statutes of the United States provide that persons so surrendered should be tried for no other or different offense than that upon which they were surrendered. (See page 433.)

Interstate extradition is founded neither upon comity between States or treaties, but upon the fundamental law of the land, the Constitution of the United States. Section 2 of article 4 reads as follows: "A person charged in any State with treason, felony or other crime, who shall flee from justice and be found in another State shall, on demand of the Executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime."

It will thus be seen that the principles applying to foreign extradition are not applicable to interstate prisoners; extradition is not confined to specific crimes, but includes all crimes. No question can arise

that the State might be willing to surrender a fugitive for one crime but not for another, as in the case of a foreign country, but the States are commanded to surrender for all crimes; there is no question of bad faith that can arise by reason of extraditing for one crime and trying for another; there is no imposition upon the surrendering State, because the demanding State has a right to demand for any crime.

In the Rauscher case the prisoner was tried for an offense which was not extraditable, the charge upon which he was extradited being abandoned, and the court held that where a person had been extradited for one offense he could not be tried for any other until a reasonable time and opportunity had been given him after his release or trial upon such charge, to return to the country from whose asylum he had been taken. Where a person can only be taken for certain specified crimes, that is a reasonable rule and the principle of it easily understood. And in that case there was a statute of the United States requiring that he be protected by the United States authorities for a reasonable time after his discharge from custody on account of the crime for which he was extradited.

But in the case at bar the State of New York can demand of the executive authorities of the State of Wisconsin a surrender of the relator, to be tried for the crime of robbery just the same as for the crime of larceny; and it would be a manifest absurdity that a law should be so construed as to require that a defendant should be set at large or returned to the State of Wisconsin, and a demand forthwith made upon the authorities of that State to return him to this State again, that he may be tried. And there is no statute requiring it as in the Rauscher case.

Mayham, P. J., and Putnam, J., concurred.

Order affirmed.