ARTIBEE v CHEBOYGAN CIRCUIT JUDGE

1. BASTARDS—PATERNITY ACT—PURPOSE OF STATUTE.
   The purpose of the Paternity Act is not to punish the putative father but rather to secure support for the child (MCLA 722.711 et seq.).

2. BASTARDS—PATERNITY ACT—ORDER OF FILIATION—CONFINEMENT OF FATHER—CONTEMPT.
   Confinement of a father is not the objective or result of a paternity proceeding, but rather is one possible result of a contempt of court proceeding; the only result of a paternity proceeding is an order of filiation establishing the father-child relationship and specifying the sum the father is required to pay for his child's support and education (MCLA 722.717, 722.719, 722.727).

3. CONSTITUTIONAL LAW—RIGHT TO COUNSEL—BASTARDS—PATERNITY ACT.
   There is no constitutional right to counsel for defendants in paternity proceedings because the purposes and objectives of paternity proceedings are such that the direct result of these actions is *never* a deprivation or restriction of liberty (MCLA 722.711 et seq.).

Original action in the Court of Appeals. Submitted Division 3 May 8, 1974, at Grand Rapids. (Docket No. 18077.) Decided July 24, 1974. Leave to appeal applied for.

Complaint by Kenneth Artibee against Cheboygan Circuit Judge Joseph P. Swallow for superintending control to require the defendant to acknowledge plaintiff's right to appointed counsel in a paternity suit. Relief denied.

REFERENCES FOR POINTS IN HEADNOTES
[1] 10 Am Jur 2d, Bastards § 75.
[2] 10 Am Jur 2d, Bastards § 129.
[3] 10 Am Jur 2d, Bastards § 80.

*Jerry L. Sumpter,* for plaintiff.

*Boyce, Yahne & Wenzel,* for defendant.

*Amicus Curiae:* Legal Services of Eastern Michigan (by *Dolores Coulter).*

Before: ALLEN, P. J., and J. H. GILLIS and QUINN, JJ.

J. H. GILLIS, J. On December 22, 1971 a child was born to Brenda Joyce Valley. Miss Valley subsequently applied to Cheboygan County Department of Social Services for aid to dependent children benefits. Thereafter, based on information furnished by Miss Valley, the Cheboygan County Prosecutor commenced an action in circuit court against Kenneth Artibee pursuant to the Paternity Act, MCLA 722.711 *et seq.;* MSA 25.491 *et seq.,* alleging that Artibee was the child's father. At his August 15, 1973 arraignment Artibee moved that the court appoint counsel at public expense to represent him. His motion was denied. Artibee then filed a complaint for superintending control in this Court requesting an order requiring the Cheboygan Circuit Judge to acknowledge his right to appointed counsel if he were to establish his indigency. On October 15, 1973, this Court ordered the circuit judge to show cause why Artibee should not be granted the relief requested. The precise question presented here for our determination is: Do defendants in paternity suits have a right to counsel under either the United States Constitution or the Constitution of the State of Michigan, thereby requiring the appointment of counsel for an indigent defendant?

# I

The basic argument of the circuit judge is that a paternity suit is not a criminal prosecution, and that there is a right to counsel only if an action is criminal. He argues first that the Sixth Amendment to the United States Constitution[1] and art 1, § 20 of the Michigan Constitution[2] both provide specifically that an accused shall have a right to counsel in all *criminal* prosecutions. He also relies heavily on the recent interpretation of the Sixth Amendment by the United States Supreme Court in *Argersinger v Hamlin,* 407 US 25; 92 S Ct 2006; 32 L Ed 2d 530 (1972),[3] where the Court held that:

"[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.

"That is the view of the Supreme Court of Oregon, with which we agree. It said in *Stevenson v Holzman,* 254 Or 94, 102; 458 P2d 414, 418 [1969]:

" 'We hold that no person may be deprived of his liberty who has been denied the assistance of counsel as guaranteed by the Sixth Amendment. This holding is

---

[1] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."

[2] "In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in all courts not of record; to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have the assistance of counsel for his defense; to have an appeal as a matter of right; and in courts of record, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."

[3] *See People v Studaker,* 387 Mich 698; 199 NW2d 177 (1972).

applicable to all criminal prosecutions, including prosecutions for violations of municipal ordinances. The denial of assistance of counsel will preclude the imposition of a jail sentence.'" 407 US 25, 37–38; 92 S Ct 2006, 2012–2013; 32 L Ed 2d 530, 538–539.

The circuit judge says that *Argersinger* stands for the proposition that there is a constitutional right to counsel *only where* 1) punitive imprisonment results 2) from a criminal prosecution. He contends that paternity proceedings fail to meet both of these conditions. In addition to arguing that paternity suits are civil in nature, the circuit judge, relying on *In re Kaminsky,* 70 Mich 653; 38 NW 659 (1888), says that any confinement under the Paternity Act is not punitive imprisonment.[4]

We find three serious fallacies in the circuit judge's position. First, while *Argersinger* does stand for the proposition that counsel is required whenever a person is to be imprisoned for any criminal offense, it does not say that this is the *only* situation requiring counsel. Second, the circuit judge ignores other constitutional provisions which could arguably support a claim of right to counsel in paternity suits. Specifically we refer to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and art 1, § 17 of the Michigan Constitution, both of which provide that no person shall be deprived of "life, liberty, or property, without due process of law". Third, by arguing that counsel is required only in criminal actions, and that paternity proceedings are essentially "noncriminal or civil in nature",

---

[4] In *In re Kaminsky,* 70 Mich 653; 38 NW 659 (1888), it was held that a father, confined for failure to pay the required bond to secure his child's support, could not be confined in the Detroit House of Correction because it was a prison solely for persons convicted of offenses.

the circuit judge is saying that labels should determine the disposition of this issue. We disagree.

Courts have felt compelled to attempt to classify paternity suits. In Michigan paternity actions have been denominated "noncriminal"[5] or "quasi-criminal".[6] Of course, as this Court pointed out in *Romain v Peters,* 9 Mich App 60; 155 NW2d 700 (1967), any action which is "quasi-criminal" must also be "quasi-civil". Almost every state has ruled that these actions are basically civil in nature.[7] However, whether a proceeding is labeled civil or criminal should not be the focus of an important constitutional inquiry. The Supreme Court refused to base its decision in *Argersinger* on any "petty offense—serious offense" distinction. Likewise, we will not let semantics control our decision here.

The fallaciousness of the circuit judge's argument can best be seen by a brief examination of the juvenile court system. Juvenile court proceedings are generally considered noncriminal. Such is the case in Michigan. MCLA 712A.1; MSA

[5] *Semon v People,* 42 Mich 141; 3 NW 304 (1879); *In re Cannon,* 47 Mich 481; 11 NW 280 (1882); *People v Harty,* 49 Mich 490; 13 NW 829 (1882).

[6] *People v Phalen,* 49 Mich 492; 13 NW 830 (1882); *People v Smith,* 65 Mich 1; 31 NW 599 (1887); *People v Martin,* 256 Mich 33; 239 NW 341 (1931); *People v McFadden,* 347 Mich 357; 79 NW2d 869 (1956).

[7] *See, for example, Pelak v Karpa,* 146 Conn 370; 151 A2d 333 (1959); *Perry v District of Columbia,* 212 A2d 339 (DC App, 1965); *State v Stevens,* 279 Minn 390; 157 NW2d 52 (1968); *State v Clark,* 58 NJ 72; 275 A2d 137 (1971); *ABC v XYZ,* 50 Misc 2d 792; 271 NYS2d 781 (1966); *People ex rel Harris v Williams,* 8 Ill App 3d 821; 291 NE2d 323 (1972); *Leach v State ex rel Cooper,* 398 P2d 848 (Okla, 1965); *Oliveira v Santosuosso,* 102 RI 362; 230 A2d 864 (1967); *Frazier v McFerren,* 55 Tenn App 431; 402 SW2d 467 (1964); *State v Judd,* 27 Utah 2d 79; 493 P2d 604 (1972); *Bielawski v Burke,* 121 Vt 62; 147 A2d 674 (1959); *State ex rel Crouser v Mercer,* 141 W Va 691; 92 SE2d 745 (1956); *State ex rel Sowle v Brittich,* 7 Wis 2d 353; 96 NW2d 337 (1959).

Maryland is the only state we found that treated paternity suits as criminal proceedings. *See Lank v State,* 219 Md 433; 149 A2d 367 (1959).

27.3178(598.1). While juvenile delinquents may be confined in state institutions, they are not imprisoned with criminals. See MCLA 712A.16; MSA 27.3178(598.16). Thus, neither of the *Argersinger* conditions which mandate the appointment of counsel are present in juvenile proceedings. Nonetheless the United States Supreme Court in *In re Gault,* 387 US 1; 87 S Ct 1428; 18 L Ed 2d 527 (1967), held that the Due Process Clause of the Fourteenth Amendment requires that in proceedings:

"[T]o determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." 387 US 1, 41; 87 S Ct 1428, 1451; 18 L Ed 2d 527, 554.

On the question of semantics Mr. Justice Harlan, concurring in part and dissenting in part, said:

"It must at the outset be emphasized that the protections necessary here cannot be determined by resort to any classification of juvenile proceedings either as criminal or as civil, whether made by the State or by this Court. Both formulae are simply too imprecise to permit reasoned analysis of these difficult constitutional issues. The Court should instead measure the requirements of due process by reference both to the problems which confront the State and to the actual character of the procedural system which the State has created." 387 US 1, 68; 87 S Ct 1428, 1465; 18 L Ed 2d 527, 569.

## II

Our rejection of the premises of the circuit judge's argument does not mean that we have

rejected his conclusion, *i.e.,* that appointment of counsel is not constitutionally required in paternity suits. Our rejection simply means that we think the important question raised in this case demands a different approach.

Presently, there is a constitutional right to counsel for defendants in 1) criminal prosecutions and 2) juvenile proceedings. We are urged here to extend this right to a third type of action—paternity. To determine whether this extension is constitutionally mandated we must examine and compare the purposes, objectives, and results of criminal and juvenile actions, with the purposes, objectives, and results of paternity proceedings.

A. *Criminal Proceedings*

Perkins says "[c]rime is any social harm defined and made punishable by law".[8] And, according to Wharton:

"A crime is the commission or omission by a person having capacity, of any act which is either prohibited or compelled by law, and the commission or omission of which is punishable by a proceeding brought in the name of the government whose law has been violated."[9]

The common element of these definitions is that a crime is something "punishable". However, both Perkins and Miller think it erroneous to speak of punishment as the objective of criminal law.[10] Perkins contends that "[t]he purpose of criminal law is to define socially intolerable conduct, and to hold conduct within limits which are reasonably acceptable from the social point of view"—that

[8] Perkins, Criminal Law (2d ed), p 9.

[9] 1 Wharton, Criminal Law and Procedure, § 10, pp 11–12. *See* Miller, Criminal Law, § 2, pp 16, 17; *People v Veenstra,* 337 Mich 427; 60 NW2d 309 (1953).

[10] Perkins, p 4; Miller, § 3, pp 18, 19.

punishment is simply the means of carrying out this underlying purpose.[11]

When we examine punishment, we see that it has various objectives: retribution, deterrence, prevention, and rehabilitation.[12] All of these goals of punishment would tend to achieve the purpose of criminal law as espoused by Perkins, *i.e.,* to hold conduct within socially tolerable limits. However, there are differing views on which of these goals is of primary importance. *Sauer v United States,* 241 F2d 640, 648 (CA 9, 1957), opined that the "ultimate goal" of criminal law is deterrence, and "[i]n attempting to achieve this end we employ means which secondarily satisfy the retributive feelings of society". See *State v Rinehart,* 255 Iowa 1132; 125 NW2d 242 (1963). And Mr. Justice Black, writing for the United States Supreme Court in *Williams v New York,* 337 US 241, 248; 69 S Ct 1079, 1084; 93 L Ed 1337, 1343 (1949), said:

"Retribution is no longer the dominant objective of the criminal law. Reformation and rehabilitation of offenders have become important goals of criminal jurisprudence."

Some courts have gone a step further and intimated that rehabilitation is the primary goal of punishment.[13]

---

[11] *Id.* In *Sauer v United States,* 241 F2d 640, 648 (CA 9, 1957), the Court said that: "At least one purpose of the penal law is to express a formal social condemnation of forbidden conduct, and buttress that condemnation by sanctions calculated to prevent that which is forbidden".

[12] *See* 1 Wharton, Criminal Law and Procedure, ch 1, pp 1–10; *Pennsylvania ex rel Sullivan v Ashe,* 302 US 51; 58 S Ct 59; 82 L Ed 43 (1937); *United States v Brown,* 381 US 437; 85 S Ct 1707; 14 L Ed 2d 484 (1965); *People v McFarlin,* 389 Mich 557; 208 NW2d 504 (1973).

[13] *Benson v United States,* 332 F2d 288 (CA 5, 1964); *State ex rel Ronan v Stevens,* 93 Ariz 375; 381 P2d 100 (1963); *People v Brown,* 60 Ill App 2d 447; 208 NE2d 629 (1965).

Punishment may take the form of 1) imprisonment, 2) probation, or 3) a fine. The first two affect the convicted person's liberty; imprisonment deprives him of it, while probation simply restricts it. Therefore, the direct result of our attempts to achieve the objectives of criminal law usually is a deprivation or restriction of liberty.

### B. *Juvenile Proceedings*

The objective of the founders of the juvenile court system was the rehabilitation of youthful offenders.

"The early reformers were appalled by adult procedures and penalties, and by the fact that children could be given long prison sentences and mixed in jails with hardened criminals. They were profoundly convinced that society's duty to the child could not be confined by the concept of justice alone. They believed that society's role was not to ascertain whether the child was 'guilty' or 'innocent,' but 'What is he, how has he become what he is, and what had best be done in his interest and in the interest of the state to save him from a downward career.' The child—essentially good, as they saw it—was to be made 'to feel that he is the object of [the state's] care and solicitude,' not that he was under arrest or on trial. The rules of criminal procedure were therefore altogether inapplicable. The apparent rigidities, technicalities, and harshness which they observed in both substantive and procedural criminal law were therefore to be discarded. The idea of crime and punishment was to be abandoned. The child was to be 'treated' and 'rehabilitated' and the procedures, from apprehension through institutionalization, were to be 'clinical' rather than punitive." *In re Gault,* 387 US 1, 15–16; 87 S Ct 1428, 1437; 18 L Ed 2d 527, 539 (1967).

Thus, there was no intention to deter or restrain or to find a child "guilty". Rather the intention was to cure. This continues as the overriding

purpose of our juvenile courts.[14]

While juveniles are not imprisoned as criminals, a youth who is found to have committed the act charged may be either 1) confined or 2) put on probation. For example, the Michigan statute, MCLA 712A.18; MSA 27.3178(598.18), provides for the following possible dispositions:

"(a) Warn the child or the parents, guardian, or custodian and dismiss the petition.

"(b) Place the child on probation, or under supervision in his own home, upon such terms and conditions, including reasonable rules for the conduct of the parents, guardian, or custodian, if any, designed for the physical, mental or moral well-being and behavior of the child, as the court shall determine.

"(c) Place the child, in a suitable boarding home, which if a home of persons not related to the child, shall be licensed as provided by law.

"(d) Place the child in or commit the child to a private institution or agency incorporated under the laws of this state and approved or licensed by the state department of social welfare for the care of children of similar age, sex and characteristics.

"(e) Commit the child to a public institution or county facility or institution operated as an agency of the court or county or agency authorized by law to receive children of similar age, sex and characteristics."

Thus, the direct consequences to a person "convicted" under a juvenile court act and to a person

[14] "The objectives [of juvenile courts] are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment." *Kent v United States,* 383 US 541, 554; 86 S Ct 1045, 1054; 16 L Ed 2d 84, 94 (1966). *See United States v King,* 482 F2d 454 (CA 6, 1973); *In re Johnson,* 178 F Supp 155 (D NJ, 1957); *People v Dotson,* 46 Cal 2d 891; 299 P2d 875 (1956); *In re Walker,* 282 NC 28; 191 SE2d 702 (1972); *In re Poulin,* 100 NH 458; 129 A2d 672 (1957). *See, also,* Note, *Rights and Rehabilitation in the Juvenile Courts,* 67 Col L Rev 281 (1967); Ketcham, *Legal Renaissance in the Juvenile Court,* 60 NWU L Rev 585 (1965).

convicted of a crime are essentially the same—a deprivation or restriction of his liberty.

C. *Paternity Proceedings*

First, we must examine relevant portions of the Michigan Paternity Act. MCLA 722.711 *et seq.;* MSA 25.491 *et seq.*

"(c) The complaint shall be made to, and for the purpose of this act jurisdiction is conferred upon the circuit court; it shall be reduced to writing and the proceedings shall be conducted by an attorney employed by the complainant. If the department of social services of the county wherein the complainant resides first determines her to be eligible for public assistance or to be without means to employ an attorney or if the department of social services is the complainant, then the prosecuting attorney or an attorney employed by the county pursuant to section 1 of Act No. 15 of the Public Acts of 1941, as amended, being section 49.71 of the Compiled Laws of 1948, shall represent the complainant in initiating and conducting the proceedings under this act. The complaint shall be verified by oath or affirmation of complainant. * * *

"(d) The complainant shall charge the person named as defendant with being the father of the child and state the time and place, as near as possible, where the complainant was begotten with child. If the department of social services is the complainant, the person named as defendant shall be charged upon information and belief.

"(e) Upon the filing of the complaint the court shall issue a warrant against the alleged father directed to any peace officer in the state which may be executed in any part of this state. Upon the alleged father being brought before the court by virtue of the warrant, the court thereupon, or as soon thereafter as may be, shall proceed with the trial of the case." MCLA 722.714; MSA 25.494.

"(a) If the finding of the court or verdict be against the defendant, or if the defendant acknowledges paternity orally to the court or by the filing in the case of his written acknowledgment of paternity, or if he is served

with summons or a warrant and a default is duly taken against him, the court shall make an order of filiation declaring paternity and for the support and education of the child.

"(b) The order of filiation shall specify the sum to be paid weekly or otherwise, until the child reaches the age of 18. In addition to providing for the support and education, the order shall also provide for the payment of the necessary expenses incurred by or for the mother in connection with her confinement; for the funeral expenses if the child has died; for the support of the child prior to the making of the order of filiation; and such expenses in connection with the pregnancy of the mother or of the proceedings as the court deems proper.

"(c) When an order of filiation has been made, the clerk of the court shall forthwith transmit to the state commissioner of health on a form prescribed by him a written notification as to the order, together with such other facts as may assist in identifying the birth record of the person whose paternity was in issue. If the order is abrogated by a later judgment or order of the same or a higher court, that fact shall be immediately communicated in writing to the state commissioner of health on a form prescribed by him by the clerk of the court which entered the order." MCLA 722.717; MSA 25.497.

"(c) The judge, in case of default in the payment, when due, of any installment or any part thereof or in the condition of the bond, may adjudge the reputed father guilty of contempt of court, by reason of the default, and may order him committed to the county jail or other penal institutions in the state of Michigan, where his earnings or a portion thereof, shall be applied to the support of the child, or confinement expenses, but for a period not exceeding 1 year or until the amount of the installment so due, shall be fully paid, but the commitment of the reputed father shall not operate to stay or defeat the obtaining of judgment and the collection thereof by execution. The rendition and the enforcement of decree or judgment shall not be construed to bar or hinder the taking of similar proceedings for subsequent defaults." MCLA 722.719; MSA 25.499.

In *Romain v Peters,* 9 Mich App 60; 155 NW2d 700 (1967), this Court said that the purpose of our Paternity Act is "not to punish the putative father", but is rather to secure "support of the child". Other jurisdictions are generally in accord.[15] Some courts have noted that a secondary objective of these laws is to relieve the public of the support obligation.[16]

The direct result of a paternity proceeding is an order of filiation (MCLA 722.717; MSA 25.497), establishing the father-child relationship and specifying the sum the father is required to pay for his child's support and education. This is the only result of a paternity proceeding and it is wholly consistent with the proceeding's objectives. Confinement may occur if the father fails to comply with the order, but such confinement is not the objective or result of the paternity proceeding, but rather is one possible result of a contempt of court proceeding. MCLA 722.719, 723; MSA 25.499, 503.

### III

We have seen that the purposes and objectives of criminal and juvenile proceedings are such that the usual and direct result of these actions is a deprivation or restriction of liberty. We have also seen that the purposes and objectives of paternity proceedings are such that the direct result of these actions is *never* a deprivation or restriction of liberty. For this reason we hold that there is no constitutional right to counsel for defendants in paternity proceedings.

---

[15] *See Perry v District of Columbia, supra; People v Williams, supra; ABC v XYZ, supra; Oliveira v Santosuosso, supra; Frazier v Mc-Ferren, supra; State v Judd, supra; Bielawski v Burke, supra; State v Bowen, supra; State v Brittich, supra.*

[16] *See, for example, Pelak v Karpa, supra; State v Clark, supra; State v Mercer, supra.*

The requirements of procedural due process are flexible and may be adapted to the demands of a variety of contexts. *McNeill v Butz,* 480 F2d 314 (CA 4, 1973).

"[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the *government function* involved as well as of the *private interest* that has been affected by governmental action." (Emphasis supplied.) *Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v McElroy,* 367 US 886, 895; 81 S Ct 1743, 1748–1749; 6 L Ed 2d 1230, 1236 (1961); *see Goldberg v Kelly,* 397 US 254, 263; 90 S Ct 1011, 1018; 25 L Ed 2d 287, 296 (1970); *Morrissey v Brewer,* 408 US 471, 481; 92 S Ct 2593, 2600; 33 L Ed 2d 484, 494 (1972).

The government's function in a paternity suit is not to deprive the putative father of his liberty. Freedom is not the private interest primarily affected by these proceedings.

Admittedly, confinement is a collateral possibility via a contempt of court proceeding. However, confinement for contempt of court may also result if a party to a divorce or separate maintenance proceeding has been ordered to pay money for the support of his minor children and fails to do so. MCLA 552.201; MSA 25.161. Moreover, any judgment debtor is subject to civil arrest and imprisonment if under certain circumstances he fails to pay the judgment secured against him. MCLA 600.6075; MSA 27A.6075. Therefore, were we to hold that procedural due process mandated a right to counsel in paternity proceedings, logic would mandate a right to counsel in virtually all civil proceedings. We don't think the flexible concept of due process demands such a result.

Since the Cheboygan Circuit Judge has shown

cause why the relief sought in plaintiff Artibee's complaint should not be granted, we order that the relief be denied. No costs, a public question being involved.

All concurred.