ARTIBEE v CHEBOYGAN CIRCUIT JUDGE

Docket No. 56208. Argued April 5, 1976 (Calendar No. 1).—Decided
July 8, 1976.

Plaintiff Kenneth Artibee brought a complaint for superintending
control in the Court of Appeals against Cheboygan Circuit
Judge Joseph P. Swallow to require the circuit court to ac-
knowledge the plaintiff's right as a defendant in a paternity
action to appointed counsel if he were to establish his indi-
gency. The Court of Appeals, Allen, P. J., and J. H. Gillis and
Quinn, JJ., denied relief (Docket No. 18077). Plaintiff appeals.
*Held:*

An indigent defendant in a paternity action has a right to
appointed counsel. Paternity proceedings are quasi-criminal.
The interests of the affected individuals are substantial and the
proceedings are sufficiently complex to require counsel to in-
sure a fair trial. Many procedural safeguards attendant to
criminal trials have been made applicable to paternity proceed-
ings and the plaintiff's representation is often undertaken at
public expense. This decision is to be applied prospectively to
paternity trials taking place on or after the date of publication
of the opinion.

Justice Coleman, joined by Justices Lindemer and Ryan,
dissented: The facts and the specific proceeding involved do not
require the application of a United States criminal case which
held that absent a waiver of the right to counsel no person may
be imprisoned for any offense unless he was represented by
counsel at his trial. Here the trial judge specifically excluded
confinement as a possible action when he denied the defendant
appointed counsel and stated that he would appoint an attor-
ney if the interest of justice required. Paternity is not an
"offense" for which one may be imprisoned and is primarily
civil in nature under the statute. The statutory policy of
paternity proceedings is that the parents of a child born out of

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 10 Am Jur 2d, Bastards § 80.
    16 Am Jur 2d, Constitutional Law § 573.
[2, 4, 5] 10 Am Jur 2d, Bastards § 75.

wedlock are liable for the support of the child. The proceedings are special and peculiar and involve civil consequences only; they are not criminal proceedings. The respondent is not brought before the court, even on a bench warrant, for punishment or sentence of confinement but solely to determine the question of paternity of a child and related responsibilities.

54 Mich App 433; 221 NW2d 225 (1974) reversed.

### OPINION OF THE COURT

1. BASTARDS—PATERNITY PROCEEDINGS—CONSTITUTIONAL LAW—RIGHT TO COUNSEL.

   An indigent defendant in a paternity action has a right to appointed counsel.

2. BASTARDS—PATERNITY PROCEEDINGS—CONSTITUTIONAL LAW—RIGHT TO COUNSEL.

   Paternity proceedings are quasi-criminal in nature; the interests of the individuals affected by the proceedings are substantial, and the nature of the proceedings is sufficiently complex to require counsel to insure a fair trial.

### DISSENTING OPINION

COLEMAN, LINDEMER, and RYAN, JJ.

3. BASTARDS—PATERNITY PROCEEDINGS—CONSTITUTIONAL LAW—RIGHT TO COUNSEL.

   *Paternity proceedings do not require that a defendant be represented by counsel at his trial where the trial court specifically excluded confinement of the defendant as a possible action.*

4. BASTARDS—PATERNITY PROCEEDINGS—NATURE OF PROCEEDINGS.

   *Paternity proceedings are not criminal in any correct sense; the matter involved is not recognized as a crime or misdemeanor, and the action is not punitive but insures that the parents of a child rather than the state fulfill parental obligations to support the child.*

5. BASTARDS—PATERNITY PROCEEDINGS—NATURE OF PROCEEDINGS.

   *A paternity action is primarily civil in nature, a special legislative creation; a respondent in a paternity action is not brought before the court for punishment or sentence of confinement but solely to determine the question of paternity and related responsibilities.*

*Jerry L. Sumpter* for plaintiff.

*Douglas K. Wenzel* for defendant.

Amicus Curiae: *Dolores Coulter* for Legal Services of Eastern Michigan.

FITZGERALD, J. The issue is whether an indigent defendant in a paternity action has a right to appointed counsel. We hold prospectively that he does have such a right.

On November 2, 1971, a complaint was filed against Kenneth Artibee under The Paternity Act[1] in Cheboygan Circuit Court. Because the complainant has been determined eligible for aid to dependent children benefits, a Cheboygan County prosecutor represents her in the conduct of these proceedings. It is not disputed that a warrant issued upon the complaint and that Artibee was arrested. He sought the assistance of counsel, and Attorney Jerry L. Sumpter entered a special appearance in his behalf at the August 15, 1973 arraignment for the purpose of requesting appointment of counsel on the grounds of indigency. This motion was denied. A complaint for superintending control was filed in the Court of Appeals requesting that the trial court be ordered to appoint counsel if Artibee were to establish indigency. The opinion of the Court of Appeals denying relief is reported at 54 Mich App 433; 221 NW2d 225 (1974). We reverse the Court of Appeals and remand this matter to the circuit court for a determination as to indigency and appointment of counsel if indigency is established.

Const 1963, art 1, § 17, embodies this state's guarantee of due process of law. An analysis of what process is due in a particular proceeding must begin with an examination of the nature of

---

[1] MCLA 722.711 *et seq.;* MSA 25.491 *et seq.*

the proceeding and the interests which may be affected by it. Paternity proceedings are quasi-criminal. The interests of the individuals affected are substantial, and the nature of the proceedings is sufficiently complex so as to require counsel to insure a fair trial.

The statute requires that the county prosecute the action if the complainant is without the means to employ an attorney.[2] Both Federal and state law provide a monetary incentive to prosecute.[3] A defendant's interest in being free from bodily restraint is directly affected from the beginning of the proceedings, since a warrant may issue upon the filing of the complaint. Upon arraignment, a defendant's failure to make the required recognizance or cash deposit may result in his commitment to the county jail.[4] Although the immediate consequence of the paternity judgment is an order of filiation and for support, the order is enforceable by contempt proceedings. Penalties for contempt include up to one year in the county jail or state prison or until the amount due is fully paid.[5]

Not only will an indigent defendant be less likely to remain free from bodily restraint, but also an uncounseled defendant will be less able to defend himself at trial against an untrue allegation of paternity. In contrast with support ordered following divorce, there is often a sharply disputed

[2] MCLA 722.714(c); MSA 25.494(c).

[3] As a condition to receipt of Federal aid to families with dependent children (AFDC) moneys, the state must implement a plan to establish the paternity of any child born out of wedlock on behalf of whom aid is claimed. 42 USC 602a(27), 654(4). The costs of such a program are subsidized by Federal funds. 42 USC 655. Once paternity is established, support payments made by fathers on behalf of children receiving public assistance are transmitted by the Friend of the Court to the state pursuant to MCLA 722.718; MSA 25.498.

[4] MCLA 722.714(e); MSA 25.494(e).

[5] MCLA 722.719(c); MSA 25.499(c).

factual question concerning the relationship of the parties to a paternity action. The object of the proceedings is to determine with finality the obligation of support, and not merely to determine on the basis of present circumstances an appropriate level of support. An unrepresented paternity defendant may be unaware of his obligation to file notice of alibi if he intends to rely upon that defense.[6] He may be unaware of his statutory right to demand blood tests or unable to analyze the legal implications of the results. In *People v Stoeckl,* 347 Mich 1; 78 NW2d 640 (1956), it was counsel appointed on the morning of trial for the indigent defendant who made the demand for blood tests and who objected when the prosecutor made impermissible comments to the jury on the defendant's failure to take the stand. In regard to the impermissible comments, Justice KELLY, 347 Mich at 17–18, said as follows:

"If bastardy proceedings are criminal to that point where the statutory provisions in regard to the right to waive a jury in criminal cases prevail, then the proceedings should be criminal to that point where the prohibition against commenting on defendant's failure to testify should apply.*

"Justice SMITH's opinion on this question could be accepted if this Court would adopt the principle that once the criminal procedural phases of bastardy, such as warrant, bail, et cetera, have served their purposes and the trial commenced, then all criminal aspects disappear and the case should be tried as civil in its nature.

"* See Const 1908, art 2, § 16.—REPORTER."

Another consideration is that the determination of paternity will be *res judicata* for the next 18

---

[6] *People v McFadden,* 347 Mich 357; 79 NW2d 869 (1956).

years during which the defendant faces a contin-
ued threat of arrest and compelled appearances in
court to explain any delinquencies, and the threat
of imprisonment should the court not be convinced
that failure to pay is justified.

The fact that many procedural safeguards at-
tendant to criminal trials have been made applica-
ble to paternity proceedings, and the reality that
prosecution is often undertaken at public expense,
constitute recognition that the outcome is of great
importance both to the defendant and to the state.
The Legislature has expressed its opinion that the
complainant and her child would not receive a fair
trial without benefit of counsel. The same consider-
ation of fundamental fairness should apply to the
defendant when faced with the power of the state
arrayed against him.

Our decision today is to be applied prospectively
to trials taking place on or after the date of
publication of this opinion.

The Court of Appeals is reversed and this mat-
ter is remanded to the trial court for proceedings
consistent with this opinion. The writ of superin-
tending control will issue if necessary. No costs, a
public question being involved.

KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ.,
concurred with FITZGERALD, J.

COLEMAN, J. *(to affirm).* Pursuant to The Pater-
nity Act,[1] Kenneth Artibee was brought before the
Cheboygan Circuit Court on August 15, 1973. With
counsel appearing specially, plaintiff claimed indi-
gency and requested the appointment of an attor-
ney at county expense. In denying Mr. Artibee's
request (but reserving discretion to appoint coun-

[1] MCLA 722.711 *et seq.;* MSA 25.491 *et seq.*

sel if the interest of justice required), the circuit judge said:

"In this instance we're not depriving a man of freedom. He's not going to jail in this particular instance. *There is no possibility that he is going to jail.* This proceeding is to determine the parentage of a child. *He does not have to testify. He can request a blood test to disprove paternity, and which cannot be used to prove paternity. The burden of proof is incumbent upon the petitioner. We're not placing the man in jeopardy as to any preclusion of his freedom.* So I'm not going to appoint counsel at this time. If the trial should develop where it would appear, in the interest of justice, to this Court, that legal counsel would be necessary to be appointed for him, in the interest of justice, at that juncture, I would appoint counsel. At this juncture, I will not appoint counsel." (Emphasis added.)

Through present counsel, plaintiff also filed a complaint for superintending control in the Court of Appeals.[2] On October 5, 1973, the Court of Appeals ordered the circuit judge to show cause why Artibee should not be granted the relief sought. The specific question was: Do defendants in paternity suits have a right to counsel under either the United States Constitution or the Constitution of the State of Michigan, thereby requiring the appointment of counsel for an indigent defendant?

The Court of Appeals held that an indigent defendant had no such right. Affirming the trial court, Judge GILLIS said:

"The direct result of a paternity proceeding is an order of filiation (MCLA 722.717; MSA 25.497), establishing the father-child relationship and specifying the sum the father is required to pay for his child's support

---

[2] 54 Mich App 433; 221 NW2d 225 (1974).

and education. This is the only result of a paternity
proceeding and it is wholly consistent with the proceed-
ing's objectives." 54 Mich App 445.

The Court determined that procedural due process
did not mandate "a right to counsel in paternity
proceedings".

We granted leave to appeal on December 23,
1974. The case became ready for argument and
was heard on April 5, 1976. In the interim, plain-
tiff's counsel filed two motions for costs, expenses
and attorney fees, the first without an affidavit of
indigency because Mr. Artibee's whereabouts were
unknown. That motion was denied. The second is
held in abeyance pending final disposition of the
case (order of March 31, 1976).

Because of the sweeping implications of our
decision, which could cut across many fields of
civil jurisprudence, this analysis will be limited to
the facts now before the Court and the specific
proceeding involved.

I.

Much argument centers on whether a paternity
act proceeding is civil, quasi-civil or quasi-criminal.
Plaintiff's counsel colorfully states his opinion that
"[p]roper labeling is often nauseating". My col-
leagues call the proceedings "quasi-criminal" and
would appoint counsel based on a "consideration of
fundamental fairness" because Mr. Artibee is
"faced with the power of the state arrayed against
him".

These proceedings do not require the application
of *Argersinger v Hamlin,* 407 US 25; 92 S Ct 2006;
32 L Ed 2d 530 (1972), a criminal case which held
that "absent a knowing and intelligent waiver no
person may be imprisoned for any offense * * *

unless he was represented by counsel at his trial". Also see *People v Studaker,* 387 Mich 698; 199 NW2d 177 (1972). The trial judge specifically excluded confinement as a possible action.[3]

It is suggested in the thoughtful and comprehensive brief of amicus curiae Legal Services of Eastern Michigan that *Argersinger* does not specifically *exclude* property rights from its due process requirements for counsel. It speaks only to imprisonment for an offense. The reasoning employed by amicus opens wide the door to appointment of county-paid counsel in many other types of civil cases. It seems wise at this juncture to stay within the United States Supreme Court mandates in *Argersinger* rather than add to them in Michigan.

Such an important matter requires more study and planning than afforded in this case if we are to avoid setting off an avalanche by moving one key stone.

The focus of the act is an important ingredient to be considered.

In a separate opinion in *Reist v̇ Bay Circuit Judge,* 396 Mich 326, 355; 241 NW2d 55 (1976), we responded "to the constitutional analysis because it incorrectly uses a criminal law focus to analyze proceedings designed to protect the child". I believe the majority opinion focuses on the distant collateral possibility that Mr. Artibee might be jailed under the contempt statute. This overlooks the statutory objective of conferring "upon the circuit courts jurisdiction over proceedings to compel and provide support of children born out of wedlock". It is statutory policy that "parents of a child so born out of wedlock are liable for the necessary support and education of the child".[4]

---

[3] In the same manner, counsel is not appointed for many petty offenders in district court.

[4] MCLA 722.712; MSA 25.492.

We have analyzed the nature of these proceedings. In *Cross v People,* 8 Mich 113–114 (1860), the Court said:

"The complainant is, in all cases, a witness; no costs follow the judgment, and the issue to be tried is the paternity of the child with which the complainant is pregnant, or of which she has been delivered. No judgment known to the common law follows the verdict, but, if found guilty, the defendant is adjudged to be the father of the child, and made chargeable with its maintenance with the assistance of the mother, in such manner as the court shall order * * * ."

Justice CAMPBELL in *Semon v People,* 42 Mich 141, 142; 3 NW 304 (1879), called the proceedings "special and peculiar". He said the judgment "if it can be properly called a judgment, involves none but civil consequences". The defendant's responsibility is to be established "by a clear preponderance of the evidence" rather than "beyond a reasonable doubt", a most important observation in this context.

In *Sutfin v People,* 43 Mich 37, 38, 39; 4 NW 509 (1880), the child (allegedly conceived in Michigan) lived in Indiana with the mother. The proceedings were described as "partly for the benefit of the complainant * * * and partly for the purpose of indemnifying the public". However, the "primary object and purpose of the act" was "the support of the bastard child * * * to prevent its becoming a charge upon the public". The "benefit to the mother * * * is secondary only".

Similar is *Waite v Washington,* 44 Mich 388, 389; 6 NW 874 (1880) which found that the statute's "primary object * * * is the protection of the public against all possible danger of being obliged

to support the child". The proceedings are "for the benefit and protection of the public".[5]

Justice Campbell wrote the decision of *In the Matter of Frank Cannon,* 47 Mich 481, 485; 11 NW 280 (1882), where the defendant had been extradited for a charge of seduction and then arrested under the bastardy act. The Court said his confinement was illegal:

"Bastardy proceedings, although of a mixed character, involve no indictable offence on which a conviction could be had in their course, and they are not criminal proceedings in the proper sense of the term. It is not pretended that any demand of extradition could be made on such a charge. Our own decisions have settled the character of such proceedings as not criminal. *Cross v People,* 8 Mich 113; *Semon v People,* 42 Mich 141; *Sutfin v People,* 43 Mich 37; *Waite v Washington,* 44 Mich 338".

The case of *People v Harty,* 49 Mich 490; 13 NW 829 (1882), was tried in the Superior Court which had jurisdiction only over crimes, misdemeanors and offenses. The Court said bastardy proceedings "are not * * * criminal in any correct sense and they do not recognize the matter they deal with as a crime or misdemeanor * * * and the term *'offenses'* does not change the effect". The proceedings were quashed.

The alleged father in *Cady v St Clair Circuit Judge,* 139 Mich 618, 620; 102 NW 1025 (1905), had been discharged from his arrest. The prosecutor asked the Court to order the circuit judge to set aside the discharge. The Court granted relief:

---

[5] Although the *Sutfin* and *Waite* cases describe the act as primarily protecting the public interest, the Court in *People, ex rel Pangborn v Smith,* 65 Mich 1, 4; 31 NW 599 (1887), said the "complainant is also interested in the proceedings and they are largely for her benefit". However, the Court was reviewing the circuit court's quashing of the complaint and this comment has the character of an aside.

"It is true that such proceedings are special and
statutory, and are strictly neither civil nor criminal in
nature. But it is contemplated, and is essential, that
control be had of the person of the respondent. A
recognizance is taken as in criminal cases, and is for-
feited, as in criminal cases, for nonappearance. For a
failure to recognize he may be committed."

Although summons may issue to bring a defend-
ant in a paternity action before the court,[6] there is
understandable reluctance on the part of some
alleged fathers to appear without the issuance of a
warrant. In order to carry out the public policy,
the court must have control of the person alleged
to be the father. It is for this purpose that a
warrant may issue. Respondent is not brought
before the court for punishment or sentence of
confinement but solely to determine the question
of paternity and related responsibilities.

The defendant in *People v Gill,* 247 Mich 479,
480; 226 NW 214 (1929), made an offer of settle-
ment. It was rejected and then introduced into
evidence as tending to show his guilt. The Court
said the "same considerations for rejecting offers
of compromise as evidence of guilt are present as
in ordinary civil cases". To permit introduction
"would be inimical to the policy of the law to
encourage settlements, discourage litigation, and
afford the individual fair opportunity to buy his
peace".

Two cases which arose out of the prior act are
cited by my colleagues to emphasize its criminal
aspect. One issue in *People v Stoeckl,* 347 Mich 1,
17; 78 NW2d 640 (1956) concerned a comment
made about defendant's failure to testify. The
majority said if the proceeding is so far criminal as
to invoke the statute permitting waiver of jury

---

[6] MCLA 722.714(e); MSA 25.494(e).

trials, then they "should be criminal to the point where the prohibition against commenting on defendant's failure to testify should apply". Also see *People v McFadden,* 347 Mich 357; 79 NW2d 869 (1956).

Under the revised act, the jury provisions were clarified. In *Romain v Peters,* 9 Mich App 60, 63; 155 NW2d 700 (1967), the Court of Appeals had to determine "how the legislature viewed the jury requirement under the paternity act". The new act did not provide for trial by jury unless specifically requested by one of the parties. The Court said this "is unmistakably the jury requirement in civil cases" and held that 10 out of 12 members of the jury could bring in a verdict (now 5 out of 6).

Although the cases are not uniform, some themes emerge. Most important is that these actions are not punitive. The goal is to have the parents rather than the state support the child. The state has a legitimate interest in insuring that the individuals fulfill parental obligations.

## II.

Plaintiff's case rests heavily upon what is perceived to be the criminal aspects of the case. Particular emphasis is placed upon two factors. (1) A warrant was issued and plaintiff was arrested and brought before the court. Although he was not placed in confinement, he could have been had the judge ordered a recognizance and had the then defendant failed to furnish it or had he forfeited it.[7] (2) If an order of filiation had resulted and if support had been ordered and if Mr. Artibee violated the order, he could in the future have been brought before the court for contempt proceedings.

---

[7] *See Cady, supra.*

These arguments are primarily based upon the assumption that the defendant might not comply with a court order. Paternity is not an "offense" for which one "may be imprisoned".

It is important, moreover, to consider and to place in balance the characteristics of a civil proceeding present in a paternity action. Among civil aspects are:

1. Confinement or costs are excluded as possible verdicts.

2. Focus is on the support of the child and the public welfare in keeping the child from becoming a public charge.

3. No jury is required unless requested by a party.

4. A vote of five from a jury of six is required for a verdict of paternity.

5. A verdict is based upon the standard of "preponderance of the evidence" rather than "beyond a reasonable doubt".

6. There is no presumption of innocence.

7. A defendant could not be tried in a court of criminal jurisdiction only.

8. A defendant cannot be extradited.

9. A defendant cannot be fingerprinted or photographed, nor have his name listed in criminal records.

10. Settlement may be effected.

11. The child may be conceived and born in another state and both mother and child reside out of the state but the trial can take place in the Michigan county where the alleged father resides.

12. Summons may issue instead of a warrant.

### III.

In the final analysis, a paternity action under

the current statute is primarily civil in nature. It is a special legislative creation.

In this case, there was no confinement and the judge assured plaintiff that there would be none. If the interest of justice required, he would appoint an attorney.

The purpose of most civil cases is to establish financial, or contractual obligations. These proceedings are to bring Mr. Artibee before the court to determine whether he is the father of the child, and if so, what, if any, financial support should be ordered.

The arguments in this case have gone well beyond the point of law which the facts present.

I would decide the case on the facts before us and affirm the result reached by the Court of Appeals.

LINDEMER and RYAN, JJ., concurred with COLEMAN, J.