**Alfred T. REYNOLDS, Petitioner,**

v.

**Debra J. KIMMONS, Respondent.**

**No. 3305.**

Supreme Court of Alaska.

Oct. 7, 1977.

William B. Schendel and Paul J. Canarsky, Fairbanks, for petitioner.

David Mannheimer, Asst. Atty. Gen., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for respondents.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

BOOCHEVER, Chief Justice.

This case involves the right of an indigent defendant to appointment of counsel in a paternity suit in which the plaintiff is represented by the state. We hold that there is such a right.

The Alaska Child Support Enforcement Agency, represented by the Attorney General of the State of Alaska, filed suit against Alfred T. Reynolds. Ms. Debra J. Kimmons, in whose name the suit was

---

brought, was the real party in interest. The complaint alleged that Mr. Reynolds is the father of Ms. Kimmons' minor child, born on June 8, 1976, and requested the court to order child support payments of $150.00 per month.[1] Reynolds wished to contest the complaint, but, due to inability to pay, was unable to secure the services of a private Fairbanks attorney. He applied to Alaska Legal Services Corporation for counsel, but because of his earnings of $9,000.00 during the past twelve months[2] and the belief that he had a constitutional right to counsel, the agency refused to represent him. Reynolds was offered limited representation if he made a bona fide but unsuccessful effort to secure services from two more members of the Fairbanks private bar. After Reynolds had made additional unsuccessful attempts to secure counsel, Alaska Legal Services agreed to represent Reynolds for the sole purpose of securing appointed counsel.

The State of Alaska opposed petitioner's motion for appointed counsel, and it was denied by Judge Blair. Judge Hodges denied a subsequent application to petition for review of Judge Blair's order at public expense. Judge Hodges found that while Reynolds was indigent for the purposes of appointment of counsel to contest the paternity suit on its merits, he had sufficient funds, or access to them, to cover the $200.00 required to petition for review. On February 23, 1977, Judge Blair issued a written order denying petitioner's motion for appointment of counsel.

This petition for review of Judge Blair's written order alleges that the due process and equal protection clauses of the United States and Alaska Constitutions require appointment of counsel for an indigent who is defending a paternity suit prosecuted by the State of Alaska. Additionally, it is contended that Reynolds is entitled to counsel because he is a licensed barber who may lose his license as an outcome of the suit.

We have previously entered an order granting the petition for review. We note that in this case, the trial court's order involves a controlling question of law as to which there is substantial ground for difference of opinion, and immediate review may materially advance the ultimate termination of the litigation.[3] Postponement of review until normal appeal could result in injustice. We also find that the order sought to be reviewed is of such importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of the court.[4]

1. In stating the facts in this opinion, we have relied on the petitioner's statement of facts, which insofar as utilized here, was agreed to by the state.

2. The state denied that Reynolds' earnings disqualified him from representation by Alaska Legal Services and pointed out that the agency did not contradict the state's assertion that Alaska Legal Services could represent Reynolds if it wanted to.

3. Appellate Rules 23(c) and (d) provide:
   *Review of Non-Appealable Orders or Decisions.*
   An aggrieved party, including the State of Alaska, may petition this court as set forth in Rule 24 to be permitted to review any order or decision of the superior court, not otherwise appealable under Rule 5, in any action or proceeding, civil or criminal, as follows:

   .     .     .     .     .

   (c) From any order affecting a substantial right in an action or proceeding which either (1) in effect terminates the proceeding or action and prevents a final judgment therein;

   or (2) discontinues the action; or (3) grants a new trial.
   (d) Where such an order or decision involves a controlling question of law as to which there is substantial ground for difference of opinion, and where an immediate and present review of such order or decision may materially advance the ultimate termination of the litigation.

4. Appellate Rule 24(a) specifies:
   *Petitions for Review.*
   (a) *When Granted.* A review is not a matter of right, but will be granted only: (1) where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court; or (2) where the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular non-appealable order or decision; or (3) where the superior court has so far

We base our decision on the merits on the due process clause of the Alaska Constitution which provides in part that "No person shall be deprived of life, liberty, or property, without due process of law. . . ."[5] We therefore do not find it necessary to discuss the other legal arguments Mr. Reynolds has advanced in support of his petition.

In *Otton v. Zaborac*, 525 P.2d 537, 539 (Alaska 1974), we referred to due process rights, stating:

> Due process is flexible, and the concept should be applied in a manner which is appropriate in the terms of the nature of the proceeding. *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 163, 71 S.Ct. 624, 644, 95 L.Ed. 817, 848 (1951). (Justice Frankfurter concurring). "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363, 1369 (1914) (citations omitted). *See Nichols v. Eckert*, 504 P.2d 1359 (Alaska 1973); *Frontier Saloon, Inc. v. Alcoholic Beverage Control Board*, 524 P.2d 657 (Alaska 1974). And, "[t]he right to be heard would be, in

many cases, of little avail if it did not comprehend the right to be heard by counsel." *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932).

The right to counsel in defense of criminal charges which may result in deprivation of liberty is well-established,[6] and we have held that the principles justifying appointment of counsel in criminal cases also apply to certain civil or quasi-civil proceedings. Thus, in *Otton*, we held that because of the possibility of a loss of liberty, due process of law required the appointment of counsel in a civil contempt proceeding for nonsupport.

The particular proceeding brought against Mr. Reynolds would not be likely to result in immediate incarceration, and no such relief has been requested by the state. Nevertheless, a parent of a child under sixteen years of age who willfully fails to furnish support, without lawful excuse, may be held criminally liable and subject to a fine of not more than $500.00 or imprisonment for not more than twelve months or both.[7] Thus, an indirect outcome of this

---

departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative tribunal, as to call for this court's power of supervision and review.

5. Alaska Constitution, art. I, sec. 7.

6. Alaska has consistently recognized broad constitutional rights to counsel in criminal proceedings, and on several occasions, this court has interpreted Alaska's constitutional rights to counsel to afford broader protections than the federal right. *See Blue v. State*, 558 P.2d 636, 640–43 n.12 (Alaska 1977); *Benefield v. State*, 559 P.2d 91 (Alaska 1977) (right to counsel extended to pre-indictment lineup absent exigent circumstances); *Otton v. Zaborac, supra; Roberts v. State*, 458 P.2d 340, 342–43 (Alaska 1969) (right to counsel required when handwriting exemplars given). *See also, Baker v. City of Fairbanks*, 471 P.2d 386 (Alaska 1970) (broadly construing federal and state rights to jury trial for revocation of drivers' license even if incarceration not possible).

7. As 11.35.010(a) specifies:
   *Desertion or nonsupport of spouse or child.*
   (a) A person who is the parent or guardian of a child under the age of 16 years dependent upon him for care, education or support, and who deserts or abandons the child or ward,

or wilfully fails, without lawful excuse, to furnish necessary food, care, clothing, shelter, medical attendance, education or support for the child or ward; or a person who, without lawful justification, wilfully abandons and leaves his spouse or refuses or neglects to provide his spouse with necessary food, clothing, shelter or medical attendance, is guilty of a misdemeanor, and upon conviction is punishable by a fine of not more than $500, or by imprisonment in a jail for not more than 12 months, or by both. However, before the trial, with the consent of the defendant, or after conviction, instead of imposing the penalties prescribed, or in addition to those penalties, the court, having regard to the circumstances and the financial ability and earning capacity of the defendant, may make an order, subject to change by it from time to time as circumstances require, directing the defendant to pay a definite sum or a certain weekly sum during such time as the court may direct, into the court for the benefit of spouse, or guardian or custodian of the minor child; and the court may release the defendant from custody or place him on probation during such time as the court directs, upon his entering into an undertaking with one or more sufficient sureties who shall qualify as bail upon arrest in a sum the court

suit could be a criminal charge. At a trial on such a charge, evidence introduced and admissions made without assistance of counsel in the paternity suit could play a significant role. Also, the support decree is enforceable by contempt proceedings which likewise could result in incarceration. In such contempt proceedings, the establishment of paternity and the amount of support payments would be res judicata.

The analogy to other cases in which we have held that a right to counsel exists is further strengthened by the fact that this proceeding is being prosecuted by the Attorney General rather than private counsel. The lawsuit was initiated by the Child Support Enforcement Agency, although the suit was brought in the name of the child's mother.[8]

Moreover, a determination of one of society's most important relationships, that of parent-child, is at stake. In *Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir. 1974), the court considered the right to counsel in a proceeding to remove custody of a child from its parents. The court stated:

The requisites of due process vary according to specific factual contexts. Here, for example, it is obvious that important rights turn on the manner in which findings of fact are determined, thus focusing attention on the safeguards surrounding the fact-finding process. When an agency of the state seeks to remove a child from the custody of parents who say they are qualified to rear the child, both the parents and the state have interest in accurate findings of fact and informed juvenile-court supervision. The state's interest in saving public money does not outweigh society's interest in preserving viable family units and the parent's interest in not being unfairly deprived of control and custody of a child. . . . The "civil litigation" generalization overlooks the nature of the rights in question and the relative powers of the antagonists. (citations omitted) [9]

The court concluded that due process required the state to appoint counsel whenever an indigent parent, unable to present his or her case properly, faces a substantial possibility of the loss of custody or a prolonged separation from a child.[10]

Approximately the same considerations are present in this suit, although it attempts to establish the parent-child relationship rather than sever it. That relationship is one of major importance, and its establishment carries with it numerous rights and obligations.

Indeed, in a paternity case, the issues may take on an even greater complexity than those involved in a custody termination proceeding. This consideration underscores the need for counsel. The court may be required to assess testimony pertaining

directs. The undertaking shall be conditioned so that the defendant shall personally appear before the court whenever ordered to do so and shall at all times comply with the terms or the order or any modification which the court may make, and shall provide that, should the conditions of the bond be broken, the defendant and his sureties consent to entry of judgment against them by the court in the amount specified in the undertaking.

8. AS 47.23.040 specifies:
*Determination of paternity.* The agency may initiate efforts to have the paternity of children born out of wedlock determined by the court only on voluntary application by the mother or other legal custodian. The agency shall appear on behalf of the mother or legal custodian. The court may enter any appropriate filiation order.

Under AS 47.23.050, the Department of Law may provide needed legal services for the Department of Health and Social Services.

9. 499 F.2d at 944–45.

10. *See also, In re Welfare of Luscier*, 524 P.2d 906 (Wash.1974); *In re B.*, 30 N.Y.2d 352, 334 N.Y.S.2d 133, 285 N.E.2d 288 (N.Y.1972). By court rule, Alaska provides for counsel when rights to child custody may be terminated. Children's Rule 5(a)(3) specifies:
(a) *When the Court Shall Appoint Counsel.* The court shall appoint counsel to represent the child, his parents, guardian, or custodian, when the assistance of counsel is desired, as follows:
(3) For his parents, guardian or custodian when they are financially unable to employ counsel to represent themselves and the issues are complex or have serious consequences.

to sexual conduct which is labeled as a crime by an Alaska statute.[11] Decisions pertaining to blood tests and the proper examination of witnesses on complex scientific issues may also be necessary.

The significant effects of this litigation are ably summarized by petitioner:

> The enforcement of the judgment, perhaps even through a criminal prosecution, is mandatory upon the State. 45 CFR 303.6. The judgment is nondischargeable in bankruptcy (11 USC § 35(a)(7)), even if the support is assigned to the State (42 USC § 656(b)). The judgment is enforceable without regard to State and federal execution exemptions laws (AS 09.35.-080(b)(2)(A); 15 USC § 1673(b)(1)), is enforceable against moneys held by the federal government (42 USC § 659); and is enforceable without regard to the alienation restriction of stock issued under the Alaska Native Claims Settlement Act (43 USC § 1606(h)(1)). The adjudication makes the father's estate unavoidably subject to a family allowance to a maximum of $6,000 (AS 13.11.140), a homestead allowance to a maximum of $12,000 (AS 13.11.125), and a personal properly allowance to a maximum of $3,500 (AS 13.11.130). The adjudication also imposes liability for support (AS 25.20.030), including hospital care (AS 47.30.270), and General Relief (AS 47.25.240) for his child under the age of majority.

In addition to the obligation of support, rights of inheritance may be affected.[12]

We also note that, as in *Cleaver*, this case is prosecuted by the state with all its resources and power. The same considerations as to the nature of the right in question and the relative power of the antagonists apply.

In light of the fact that paternity suits, in effect, are brought by the state, the significance of the parent-child relationship involved and the peculiar problems presented, we hold that due process requires the appointment of counsel for an indigent defendant.[13]

It may well be, however, that Mr. Reynolds is eligible to receive the services of an attorney of the Alaska Legal Services Corporation. The case is remanded for a determination of whether such services are available, and if not, for the appointment of other counsel by the court.[14]

REVERSED AND REMANDED.

BURKE, Justice, (dissenting).

I respectfully dissent.

Nothing in the majority opinion or the authorities cited convinces me that the defendant in a paternity action, even where indigent, is entitled to the appointment of counsel at public expense as a matter of procedural due process. The correct view, I believe, is to the contrary. *See State v. Walker*, 87 Wash.2d 443, 553 P.2d 1093 (1976); *Artibee v. Cheboygan Circuit Judge*, 54 Mich.App. 433, 221 N.W.2d 225 (Mich.App.1974), *rev'd.*, 397 Mich. 54, 243 N.W.2d 248 (Mich.1976).

Being also of the opinion that petitioner's other arguments are without merit, I would affirm the action of the superior court.

11. AS 11.40.040 criminalizes cohabitation in a state of adultery or fornication.

12. AS 13.11.045(2)(B) provides that an illegitimate child may gain rights to intestate succession through the father if ". . . the paternity is established by an adjudication before the death of the father . . . ." *See also*, the recent United States Supreme Court case of *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), which establishes that it would violate equal protection to permit

intestate succession by an illegitimate child only through the mother.

13. The Michigan Supreme Court has reached the same result, *Artibee v. Cheboygan Circuit Judge*, 397 Mich. 54, 243 N.W.2d 248 (1976). *See also, Hapfel v. Bashaw*, 2 Fam.L.Rptr. 2578 (Minn., June 11, 1976).

14. This decision shall have prospective effect only, aside from the present case, and any other case which has not gone to judgment.